## THE MONA.

### TUG ATKINS HUGHES CO. v. MARTINSEN.

(Circuit Court of Appeals, Fourth Circuit. July 20, 1922.)

No. 1948.

1. **Maritime liens ⚖═25—Towage held not a necessary, within statute providing for a maritime lien on vessel to which "necessaries" are furnished.**

    Towage *held* not a "necessary," within Act June 23, 1910, §§ 1–3 (Comp. St. §§ 7783–7785), giving a maritime lien to one who furnishes "repairs, supplies or other necessaries" to a vessel, prior to amendment thereof by Act June 5, 1920.

    [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Necessaries.]

2. **Maritime liens ⚖═24—Held not to exist for towage contracted for by charterer's undisclosed principal.**

    Where contract for towage was made with charterer's undisclosed principal, and one-half thereof was paid by such principal within 30 days after rendition of services and the principal was granted an extension of time for the payment of the other one-half, but payment thereof was not made because of the principal's insolvency, and where the charter provided for the payment of towage by charterer, there was no maritime lien for the unpaid one-half of the towage, even if a claim for towage could be maintained as a necessary, within Act June 23, 1910 (Comp. St. §§ 7783–7787), giving a maritime lien for "necessaries."

3. **Towage ⚖═9—No maritime lien for towage independent of statute.**

    A maritime lien does not exist for towage, independent of Act June 23, 1910, §§ 1–3 (Comp. St. §§ 7783–7785).

Appeal from the District Court of the United States for the Eastern District of Virginia, at Norfolk; D. Lawrence Groner, Judge.

Libel by the Tug Atkins Hughes Company against Axel Martinsen, master of the Norwegian bark Mona. From a decree of dismissal, libelant appeals. Affirmed.

John W. Eggleston, of Norfolk, Va. (Horace L. Cheyney, of New York City, and Hughes, Vandeventer & Eggleston, of Norfolk, Va., on the brief), for appellant.

H. H. Little, of Norfolk, Va. (Hughes, Little & Seawell, of Norfolk, Va., on the brief), for appellee.

Before KNAPP, WOODS, and WADDILL, Circuit Judges.

WADDILL, Circuit Judge. This is a libel in rem, filed by the appellant, the Tug Atkins Hughes Company, to recover of the Norwegian bark Mona a balance of $1,150, with interest from May 18, 1919, claimed to be due for towage of the bark in May, 1919, from its place of anchorage at Baltimore to New York, to take on cargo. The defense of the appellee is that, at the time the services were performed, the bark Mona was under charter to C. H. Pattengill Corporation, and that by the terms of the charter the charterer, and not the owner, was compelled to pay the towage bills incurred during the terms of the charter, and that the service was not rendered on account of the bark, or by authority of its master, owners, or representatives, but for the charterer,

⚖═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

and that no lien exists on the bark for the amount sued for. The District Court decided in favor of the bark, and dismissed the libel, from which decision the appeal in this case is taken.

The facts of the case are, briefly, that on the 5th of May, 1919, Messrs. Benham and Boyesen, agents for the bark at New York, entered into a charter with the C. H. Pattengill Corporation for a voyage from a United States port to one of several South American ports, named therein. By the terms of the charter, the charterer, and not the owner, was required to pay the cost of towage, and other charges enumerated. At the time of entering into this charter, the bark was at the port of Baltimore, and the charterer desired her to take on the cargo, for which she was especially chartered, at the port of New York, which necessitated the towing of the bark from Baltimore to New York, the cost of which, upon the face of the charter, was chargeable against the charterer, and not the owner. The contract of towage sued on in this case was made in New York, between appellant, libelant in the lower court, and the Caravel Steamship Company, and provided for the bark's towage from Baltimore to New York, at an agreed price of $2,300, one-half of which has been paid by said Caravel Steamship Company, and the residue remains unpaid, and for the recovery of which the libel herein was filed, as aforesaid; the purpose being to collect the balance from the bark.

At the trial, and decision in the District Court, the relation of the Caravel Steamship Company to the bark was not apparent, and not until the deposition of C. H. Pattengill, of the chartering company, was taken, by leave of this court, did it appear. He testified that the relation between said Steamship Company and his firm, the C. H. Pattengill Corporation, charterers of the Mona, was that of an undisclosed principal, and that his firm took out the charter for their benefit, as the bark's agency in New York declined to deal with the Caravel Steamship Company, because of previous unsatisfactory transactions, presumably of a financial character. The Caravel Steamship Company did fail, after paying only one-half of the towage bill, and the claim for the balance was asserted by the libelant company in the insolvency proceedings against the Caravel Steamship Company, and, when not collected there, the libel in rem against the bark in this case was filed.

Has the libelant company a lien that it can and should enforce against the bark, in the circumstances? The libelant company insists that, under the Act of June 23, 1910, "towage" is such a necessary as is contemplated by that act, and for which a lien exists against the bark, upon the rendition of the service. Counsel, moreover, insists that, independent of the Act of June 23, 1910, they are entitled to a lien on the bark, under the circumstances here; a claim for towage being, admittedly, a maritime cause of action.

[1] We will consider the case from both viewpoints. Does the Act of June 23, 1910, give a lien for "towage," or, to state it differently, is towage included within the meaning of "necessaries"? Section 1 of the act in question (U. S. Comp. Stat. §§ 7783–7785), is as follows:

"Section 1. Any person furnishing repairs, supplies, or other necessaries, including the use of dry dock or marine railway, to a vessel, whether foreign

or domestic, upon the order of the owner or owners of such vessel, or of a person by him or them authorized, shall have a maritime lien on the vessel, which may be enforced by a proceeding in rem, and it shall not be necessary to allege or prove that credit was given to the vessel."

Section 2 names the persons who shall be presumed to have authority to procure repairs, supplies, and other necessaries for the vessel, namely:

"The managing owner, ship's husband, master, or any person to whom the management of the vessel at the port of supply is intrusted."

Section 3 of the act is as follows:

"The officers and agents of a vessel specified in section two shall be taken to include such officers and agents when appointed by a charterer, or by an owner pro hac vice, or by an agreed purchaser in possession of the vessel, but nothing in this act shall be construed to confer a lien when the furnisher knew, or by the exercise of reasonable diligence could have ascertained, that because of the terms of a charter party, agreement for the sale of the vessel, or for any other reason, the person ordering the repairs, supplies, or other necessaries was without authority to bind the vessel therefor."

Towage, it will be observed, is not covered by the act, unless embraced within the meaning of "necessaries." The Congress of the United States, on June 5, 1920, amended this act (41 Stat. 1005), by including within its terms "towage, use of dry dock or marine railway, or other necessaries to any vessel," etc. The learned counsel insists that Congress only made clear, by this amendment, what was intended by the original act, and that, although the amendment was since the rendition of the service in this case, the word "necessaries" in the original act fully covers this claim.

We do not concur with counsel in this view of the meaning or purpose of Congress. On the contrary, we think the correct conclusion is that Congress amended the act by including towage, because the original act did not embrace the same. Two comparatively recent decisions, The Hatteras (C. C. A. 2d Circuit) 255 Fed. 518, 166 C. C. A. 586, and The Yarmouth (C. C. A. 5th Circuit) 262 Fed. 250, have reviewed the meaning of this act, as respects towage. In The Hatteras it was held that towage did not come within the term "necessaries" and in The Yarmouth the lien for towage was upheld. An examination of the facts in the latter case will show that the circumstances in which the lien was upheld are entirely different from those existing here. There, with a view of effecting a needed movement of the ship, in the hands of the charterer, the ship's master secured the coal necessary for the purpose. The bark's master was not consulted here; he knew nothing about, and gave no order in reference to, the towage. His ship was in Baltimore. The contract, the subject of this litigation, was made in the city of New York, between two parties with whom he had no relation, and upon the face of the charter, under which the parties claimed to have had the right to make the contract for the towage, the bark was not, and the charterer was, made liable for the amount of the same.

[2] Under the plain provisions of the Act of June 23, 1910, assuming that a claim for towage could be maintained as a necessary, we think that, upon the facts of this case, the towage service was not rendered

under such circumstances as to create a lien against the bark. It is perhaps worthy of mention to note that since the trial of this case, and while pending in this court, the appellant sought to mend its hold by taking the testimony of one of the charterers of the bark, who claims that the charterers were not, in point of fact, acting for themselves, but for the Caravel Steamship Company, whose name did not appear in the charter, and this witness states that the bark's agents in New York knew of the relation that the Caravel Steamship Company held to the transaction.

We are not inclined to give much credence to this belated testimony, coming from the actual charterer of the vessel, seeking to place the responsibility upon an alleged undisclosed principal, admittedly insolvent, especially when the effort of the undisclosed principal is to place the losses upon the innocent bark. This evidence was all in the possession of the libelant, and should have been produced at the trial, and not after the same was over. Moreover, in the circumstances of this case, the libelant should, in no event, recover against the bark, because of the utter failure to exercise any sort of diligence to ascertain with whom it was contracting. The manner of business between the libelant and the Caravel Steamship Company shows that it was never intended that this bill was to be asserted against the bark. It was contracted for, to be paid by the Caravel Steamship Company in 10 days. One-half of it was, within 30 days after the rendition of the service, paid by the said company, and the residue, an extension of time of payment having been made, was presented for collection in insolvency proceedings against that company.

[3] The suggestion that the cause of action should be maintained as a maritime claim, independent of the Act of June 23, 1910, is clearly without merit. The purpose of that act was to enlarge the class of cases under consideration against ships, and to simplify the method of enforcement of the same, and under no view, under the maritime law, prior to that act, could such a claim as the one suggested be maintained. Neither the ship's· owner, the ship's representative at the harbor in which the ship then was, or elsewhere, or the ship's master, or a representative of the ship, had anything to do with the making of the contract, the subject of this litigation, and such a claim would, under the general maritime law, as distinguished from the provisions of the Act of June 23, 1910, be clearly held to be entered into upon the faith of the owner of the ship personally, as distinguished from the ship, if not upon the personal credit of those making the same.

Our conclusion is that the decree of the lower court should be affirmed, with costs.

Affirmed.